# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdullahi Dahir, and<br>Abdifatah Hassan,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>UPS Mail Innovations, Inc. and<br>Doherty Staffing Solutions, Inc.<br><br>　　　　Defendants. | No. 17-2121 (RHK/HB)<br><br><br>**AMENDED COMPLAINT** |

PLAINTIFFS, as and for their cause of action against the above-named defendant state and allege as follows:

## PARTIES

1. Defendant UPS MAIL INNOVATIONS, INC. ("Defendant UPS") is a corporation headquartered in Atlanta, Georgia, incorporated in Delaware, and doing business in Minnesota.

2. Defendant UPS was Plaintiffs' co-employer.

3. Defendant Doherty Staffing Solutions, Inc. ("Defendant Doherty") is a corporation headquartered in Edina, Minnesota, incorporated in Minnesota, and doing business in Minnesota.

4. Defendant UPS was Plaintiffs' co-employer.

5. Plaintiff Abdullahi Dahir is a former employee of Defendants. Plaintiff Abdullahi Dahir is a resident of Hennepin County, Minnesota.

6. Plaintiff Abdifatah Hassan is a former employee of Defendants. Plaintiff Abdifatah Hassan is a resident of Hennepin County, Minnesota.

## BACKGROUND OF MUSLIM PRAYER

7. Performance of the five daily prayers is a mandatory and essential part of the life of Muslims. Completing the prayers in a timely manner is, after the declaration of faith, the most important Islamic religious practice.

8. Each prayer must be performed in a specific way and within a specific period of time. Normally prayer times have a "start time" and can be prayed until about 10-15 minutes before the start time for the next prayer.

9. There is one exception to this rule: the prayer before sunrise, called "Fajr," must be completed before sunrise.

10. Muslims are strongly encouraged to pray each prayer as close to "start time" as possible.

11. Before the start of the prayer, each individual must partake in a washing/cleansing ritual called ablution if they have released any impurities since they last made ablution. On average, ablution takes approximately 3 minutes. Prayer can take place anywhere it is clean.

12. The means of performing the prayers is constant throughout the year, but the time in which they can be offered is dependent on the position of the sun. Accordingly,

the times in which they can be performed changes with the seasons. During the longer days of summer, the timeframe in which a prayer can be offered is longer than the shorter days of winter.

13. The prayers consist of a series of recitations from the Quran accompanied by specific invocations. Muslims must make specific motions at specific times, such as standing, bowing, and kneeling, while performing the prayer. The prayers must be performed in the direction of Mecca, which is northeast in Minnesota. The entire prayer is performed in Arabic and takes approximately 4-7 minutes to complete.

14. During the prayer, a Muslim is not to be interrupted by anything but a true emergency.

## FACTUAL ALLEGATIONS

15. Plaintiffs were employed at Defendant UPS' Mendota Heights, Minnesota facility. Plaintiff Dahir had multiple assignments at the facility, with the most relevant one starting June 22, 2014. Plaintiff Hassan was hired on May 12, 2014. Both plaintiffs were fired on June 25, 2014. Plaintiffs' work primarily consisted of manual labor as line workers.

16. Plaintiffs are former Muslim employees of Defendants. Plaintiffs have sincerely-held beliefs in their religion and practice their religion as described above.

17. Plaintiffs' religion, Islam, requires Plaintiffs to pray five times per day at specific times of the day.

18. Prior to June 2014, Plaintiffs were provided the opportunity to pray during the workday. The company policy provided that when a Plaintiff needed to pray, he or she

would inform the Lead and someone would take over the station for the short time he or she was away. The prayers did not disrupt productivity.

19. In May 2014, Scott Klein ("Klein") began as the new UPS Operations Manager. Klein immediately began treating the Somali Muslim employees differently than other employees, by treating them in a less friendly manner than the other employees. He instructed Doherty employee Mark Richsmann ("Richsmann") to do the same.

20. Around June 14, 2014, an all-employee meeting occurred. Employee Faduma Nageye raised the issue of Islamic prayer and stated that she and other Muslim employees would like to be able to pray. Mr. Klein asked all the employees to raise their hands if they would need to pray. After most of the Muslim employees raised their hands, Mr. Klein stated that he wanted to replace all of the employees who had raised their hands.

21. In June 2014, Defendants Klein and Richsmann eliminated the ability for workers to choose their break times, and said prayers would not be allowed outside fixed breaks.

22. As a result of the changes in prayer policy, Plaintiffs no longer were able to meet the requirements of their prayer schedules.

23. Plaintiffs met with Defendants to negotiate but Defendants refused to negotiate. Defendants only offer was for Plaintiffs to go home.

24. On or around June 17, 2014, Richsmann announced that no Muslim employee was allowed to take any breaks outside the fixed breaks, and clarified that management did not want any employees praying outside of the fixed breaks. Richsmann

told Plaintiff Abdifatah Hassan and others that if any employee was found to be praying during a bathroom break, they would be sent home.

25. Throughout the rest of the day, Plaintiffs were not allowed to take prayer breaks outside the fixed scheduled breaks.

26. On or around June 25, 2014, multiple employees went home because they were told that was the only way they could pray. Richsmann told them that if they were going to pray, then they were not going to be allowed to return.

27. Plaintiffs filed charges with Equal Employment Opportunity Commission, ("EEOC") on April 20, 2015 which were cross-filed with the Minnesota Department of Human Rights ("MDHR").

28. The EEOC issued a dismissal and a right to sue letter against Defendant UPS dated February 28, 2017, and Defendant Doherty on June 14, 2017.

29. The Minnesota Department of Human Rights was notified of the lawsuit against Doherty on June 23, 2017 and against UPS on July 5, 2017.

30. The Minnesota Department of Human Rights issued right-to-sue letters for state claims for Plaintiff Dahir dated July 12, 2017, and for Plaintiff Hassan dated July 3, 2017.

## COUNT 1
### FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

31. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

32. Defendants engaged in unlawful employment practices involving Plaintiffs by failing to accommodate their religious beliefs, in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01, *et seq.* These practices include, but are not limited to, refusing to allow Plaintiffs time to pray in order to comply with their religious beliefs and treating Plaintiffs differently than other employees who did not request reasonable accommodation.

33. Plaintiffs held sincere religious beliefs at all relevant times and communicated those beliefs to Defendants.

34. Plaintiffs requested religious accommodation.

35. Defendants refused to provide any accommodation for Plaintiffs' religious beliefs.

36. Plaintiffs were terminated as a result of Defendants' failure to accommodate Plaintiffs' religious beliefs.

37. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' requests for religious accommodation.

38. The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or with reckless indifference to the MHRA which protects Plaintiffs.

39. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages

and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## COUNT 2
## DISCRIMINATION BASED ON RELIGION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

40. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

41. Defendants subjected Plaintiffs to differential treatment based on religion, in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01, *et seq.*

42. All Plaintiffs are Muslim.

43. Defendant treated Plaintiffs differently than employees who were not Muslim. This differential treatment includes, but is not limited to, allowing non-Muslim employees to take time away from work during work shifts but not allowing Muslim employees to do so and subjecting Muslim employees to different policies and standards than non-Muslim employees.

44. Plaintiffs were terminated as a result of Defendant's differential treatment based on religion.

45. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' religion.

46. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the MHRA which protects Plaintiffs.

47. As a direct and proximate result of Defendant's illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## COUNT 3
## FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII

48. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

49. Defendants engaged in unlawful employment practices involving Plaintiffs by failing to accommodate their religious beliefs, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* These practices include, but are not limited to, refusing to allow Plaintiffs time to pray in order to comply with their religious beliefs, and treating Plaintiffs differently than other employees who did not request reasonable accommodation.

50. Plaintiffs held sincere religious beliefs at all relevant times and communicated those beliefs to Defendants.

51. Plaintiffs requested religious accommodation.

52. Defendants refused to provide any accommodation for Plaintiffs' religious beliefs.

53. Plaintiffs were terminated as a result of Defendants' failure to accommodate Plaintiffs' religious beliefs.

8

54. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' requests for religious accommodation.

55. The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or with reckless indifference to Title VII which protects Plaintiffs.

56. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## COUNT 4
## DISCRIMINATION BASED ON RELIGION IN VIOLATION OF TITLE VII

57. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

58. Defendants subjected Plaintiffs to differential treatment based on religion, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*

59. All Plaintiffs are Muslim.

60. Defendants treated Plaintiffs differently than employees who were not Muslim. This differential treatment includes, but is not limited to, allowing non-Muslim

employees to take time away from work during work shifts but not allowing Muslim employees to do so, and subjecting Muslim employees to different policies and standards than non-Muslim employees.

61. Plaintiffs were terminated as a result of Defendants' differential treatment based on religion.

62. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' religion.

63. The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or with reckless indifference to Title VII which protects Plaintiffs.

64. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## COUNT 5
## RETALIATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

65. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

66. Defendants engaged in reprisal(s) against Plaintiffs in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01, *et seq.* These practices

include, but are not limited to, refusing to allow Plaintiffs time to pray in order to comply with their religious beliefs, and/or terminating Plaintiffs' employment, after Plaintiffs requested religious accommodation and/or complained about Defendants's failure to accommodate religious beliefs and/or engaged in other protected conduct.

67. Defendants treated Plaintiffs differently than other employees who did not engage in protected conduct, including requesting religious accommodation for praying.

68. Defendants terminated Plaintiffs' employment because Plaintiffs engaged in protected conduct, including requesting religious accommodation for praying and complaining about violations of their rights.

69. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' protected conduct.

70. The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or with reckless indifference to the MHRA which protects Plaintiffs.

71. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## COUNT 6
## RETALIATION IN VIOLATION OF TITLE VII

72. Plaintiffs reallege each and every paragraph and allegation set forth in this Complaint.

73. Defendants engaged in reprisal(s) against Plaintiffs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* These practices include, but are not limited to, refusing to allow Plaintiffs time to pray in order to comply with their religious beliefs, and/or terminating Plaintiffs' employment, after Plaintiffs requested religious accommodation and/or complained about Defendants's failure to accommodate religious beliefs and/or engaged in other protected conduct.

74. Defendants treated Plaintiffs differently than other employees who did not engage in protected conduct, including requesting religious accommodation for praying.

75. Defendants terminated Plaintiffs' employment because Plaintiffs engaged in protected conduct, including requesting religious accommodation for praying and complaining about violations of their rights.

76. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as employees because of Plaintiffs' protected conduct.

77. The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or with reckless indifference to Title VII which protects Plaintiffs.

78. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs have suffered, and continue to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses, and suffered other serious damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, pray for the following:

a. That Defendants be required to make Plaintiffs whole for their adverse, discriminatory, retaliatory and unlawful actions through restitution in the form of back pay.

b. That Plaintiffs be awarded compensatory damages in an amount to be determined at trial.

c. That Plaintiffs be awarded punitive damages pursuant to the Minnesota Human Rights Act.

d. That Plaintiffs be awarded treble damages pursuant to the Minnesota Human Rights Act.

e. That Plaintiffs be awarded punitive damages pursuant to Title VII.

f. That the Court award Plaintiffs their reasonable attorneys' fees, costs and disbursements, pursuant to state and federal law.

g. That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS**

Dated August 16, 2017

*Ellen Longfellow* (signature)

Ellen Longfellow (No. 160039)
**CAIR MINNESOTA**
2511 E. Franklin Ave. Suite 100
Minneapolis, MN 55406
Phone: (612) 206-3360
Fax: (612) 206-3361

*ATTORNEY FOR PLAINTIFFS*