UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdullahi Dahir and<br>Abdifatah Hassan,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>UPS Mail Innovations, Inc., and<br>Doherty Staffing Solutions, Inc.,<br><br>　　　　　　　　Defendants. | Civ. No. 17-2121 (PAM/HB)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motions for Judgment on the Pleadings. For the following reasons, Defendant UPS Mail Innovations, Inc.'s Motion is granted and Defendant Doherty Staffing Solutions, Inc.'s Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Abdullahi Dahir and Abdifatah Hassan were employees of Doherty, a temporary employment agency. In May and June of 2014, Doherty assigned them to work for UPS at its facility in Mendota Heights. For purposes of the events giving rise to this lawsuit, Dahir began work on June 22, 2014, although he had worked at the facility multiple times before that date. (2d Am. Compl. (Docket No. 63) ¶ 15.) Hassan started on May 12, 2014. (Id.) Plaintiffs are Muslim, and at the beginning of their time with UPS they were allowed to pray during the workday. (Id. ¶ 18.) Plaintiffs also allege that "Defendant UPS was Plaintiffs' co-employer." (Id. ¶¶ 2, 4.)

In May 2014, UPS named a new operations manager for the Mendota Heights facility, Scott Klein. (Id. ¶ 19.) Plaintiffs contend that Klein was hostile to Muslims and that he "instructed Doherty employee Mark Richsmann to do the same." (Id.) Plaintiffs do not explain who Richsmann is or what role he had at the UPS facility. At an unspecified date in June 2014, Klein and Richsmann allegedly "eliminated the ability for workers to choose their break times and said prayers would not be allowed outside fixed breaks." (Id. ¶ 20.) On June 14, 2014, after the new break policy was announced, Klein held a meeting with all employees. (Id. ¶ 21.) A Muslim employee raised the issue of the required Muslim prayers; Klein then asked all Muslim employees to raise their hands if they needed to pray. (Id.) Plaintiffs allege that they raised their hands, but according to their own allegations, Dahir was not working at UPS at the time of the meeting. After the employees raised their hands, Klein said that "he wanted to replace all of the employees who had raised their hands." (Id.) Plaintiffs continued to pray after this meeting. (Id. ¶ 22.)

Three days later, two Muslim employees who asked to pray were fired. (Id. ¶ 23.) Other Muslim employees started to leave, but Richsmann allowed prayer breaks that day. (Id.) On June 25, Richsmann told Plaintiffs that if they wanted to pray, they should go home. (Id. ¶ 25.) Plaintiffs contend that this constituted firing them from their jobs. (Id. ¶ 24.)

On June 26, Plaintiffs met with Doherty manager Bridget Gogolin and asked to be able to pray and to continue working at UPS. (Id. ¶ 26.) The Second Amended Complaint does not describe the outcome of this meeting, or whether Plaintiffs returned

to UPS or did other work for Doherty thereafter.

Plaintiffs, with the assistance of present counsel, filed a religious discrimination charge with the Equal Employment Opportunity Commission in April 2015, which was cross-filed with the Minnesota Department of Human Rights.  Plaintiffs amended that charge in May 2015 to include an allegation that they suffered retaliation.  (Erickson Decl. (Docket No. 31) Exs. 2, 3.)  The EEOC dismissed the charge and issued Plaintiffs right-to-sue letters.  (Am. Compl. ¶ 28.)  The MDHR issued right-to-sue letters for UPS after Plaintiffs filed this lawsuit, but as of the filing of this Motion had not issued any right-to-sue letters as to Doherty.  (Id. ¶ 30.)  At the motion hearing, counsel made reference to MDHR letters issuing as of early November.  Those letters are not in the record before the Court.

The Second Amended Complaint raises six counts.  Count 1 contends that UPS and Doherty failed to accommodate Plaintiffs' religious beliefs in violation of the Minnesota Human Rights Act.  Count 2 asserts discrimination based on religion in violation of the MHRA.  Count 3 raises a religious-accommodation claim under Title VII, and Count 4 raises religious discrimination under Title VII.  Count 5 claims retaliation in violation of the MHRA, and Count 6 claims retaliation under Title VII.

**DISCUSSION**

The Court evaluates a motion for judgment on the pleadings under Rule 12(c) using the same standards as a motion to dismiss under Rule 12(b)(6).  Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) (citation omitted).  Thus, the Court must assume the facts in the Complaint to be true and construe all reasonable inferences from

those facts in the light most favorable to the non-moving party.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted).  The Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

But a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

Defendants seek dismissal of the Second Amended Complaint on several grounds. With respect to Counts 5 and 6, they note that Plaintiffs' initial discrimination charge did not raise retaliation as an element of the charge.  Plaintiffs amended their charge several weeks after filing it, and although Plaintiffs' amended charge checked the "retaliation/reprisal" box, Plaintiffs did not add any facts regarding the alleged retaliation. Defendants ask that Counts 5 and 6 be dismissed for failure to exhaust administrative remedies.

In the alternative, Defendants argue that the retaliation claims fail to state a claim on which relief can be granted because requesting an accommodation is not protected activity. Defendants also argue that the retaliation claims are time-barred because they were not added to Plaintiffs' EEOC charge until May 2015, more than 300 days after Plaintiffs stopped working at UPS.

With regard to Counts 1, 2, and 5, Defendants contend that Plaintiffs did not comply with the Minnesota statutory requisites for bringing state-law claims, because they did not notify the MDHR of their intent to bring a lawsuit before filing the lawsuit. According to Defendants, Plaintiffs' failure to give notice before filing the lawsuit means that Plaintiffs' state-law claims are time-barred and must be dismissed.

UPS argues that Plaintiffs have not stated a claim for failure to accommodate in Counts 1 and 3. UPS notes that there is no allegation that Plaintiffs ever requested an accommodation from UPS. Essentially, UPS contends that Plaintiffs have not pled sufficient facts to allow the Court to conclude that Defendants were co-employers. Alternatively, both Defendants argue that the failure-to-accommodate claims are partially or totally time-barred. Because the charge was filed on April 20, 2015, any alleged discrimination that occurred before June 24, 2014, including the June 14 employee meeting at which employees were told that they would not be allowed to pray at work, is outside the statute of limitations.

Finally, UPS contends that Plaintiffs' religious discrimination claims in Counts 2 and 4 fail because Plaintiffs have not established that any similarly situated employees were treated differently than Plaintiffs. Doherty does not challenge the sufficiency of

5

Plaintiffs' discrimination claims.

**A.     Retaliation**

Defendants are incorrect that the retaliation claim is untimely because it was not included in Plaintiffs' initial EEOC charge. Plaintiffs amended their charge only three weeks after they filed it and included retaliation in that amended charge. Amended charges relate back to the original charge if they "clarify and amplify allegations made" in the original charge. 29 C.F.R. § 1601.12(b). Thus the retaliation claim is deemed filed as of the date the original charge was filed. Id.; see also Washington v. Kroger Co., 671 F.2d 1072, 1075-76 (8th Cir. 1982) (finding that, when additional acts of discrimination "directly related to or gr[e]w out of" the practices challenged in the prior charges, the amendment relates back to the original charge). Moreover, Title VII plaintiffs are deemed to have exhausted any claim that is "like or reasonably related to the substance" of the EEOC charge. Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998) (quotation omitted). Although retaliation is not always "like or reasonably related to" discrimination claims, id., in this instance Plaintiffs' claims of religious discrimination are part and parcel of their retaliation claims, and at least for the purposes of a motion for judgment on the pleadings, Plaintiffs have sufficiently pled that their retaliation claims grow out of their discrimination claims. The Court will not dismiss the retaliation claims on this basis.

But Plaintiff's request for time to pray is not protected activity for the purposes of a retaliation claim. See E.E.O.C. v. N. Mem'l Health Care, --- F. Supp. 3d ---, 2017 WL 2880836, at *3 (July 6, 2017) (Doty, J.) (finding that "requesting a religious

accommodation is not a protected activity" under Title VII). Title VII defines protected activity as opposing an unlawful employment practice or making a charge, testifying, or participating in an investigation or other proceeding under Title VII. Id. (citing 42 U.S.C. § 2000e-3(a)). Requesting an accommodation is not opposing a practice nor is it participating in an investigation or other proceeding. Id. "[M]erely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of religious accommodation." Id.

Plaintiffs' respond by arguing that they are not required to plead the elements of their retaliation claims at this stage. But the case on which they rely, Wilson v. Arkansas Department of Human Services, 850 F.3d 368 (8th Cir. 2017), does not completely eliminate the pleading requirements in Title VII cases. Rather, Wilson stands for the proposition that a Title VII plaintiff need not allege, at the motion-to-dismiss stage, the facts necessary to establish her prima facie case. Id. at 372. In other words, Wilson held that a plaintiff need only plead enough facts to make it plausible that the plaintiff has made out her prima facie case.

Defendants do not challenge the sufficiency of the facts Plaintiffs have pled, but instead make the legal contention that, even under Plaintiffs' version of the facts, there is no protected activity in this case. Plaintiffs repeat Wilson's caution that evidentiary issues with respect to a prima-facie case are a summary judgment concern, but the deficiency here is not a matter discovery can cure. Either Plaintiffs engaged in protected activity or they did not, and they have not alleged that they engaged in any activity apart from requesting a religious accommodation. Plaintiff's retaliation claims therefore fail.

7

**B.     Notice to MDHR**

Defendants next argue that Plaintiffs did not comply with Minnesota law regarding notice to the MDHR about their lawsuit.[1] According to Defendants, Minnesota law requires Plaintiffs to wait to file a lawsuit until 90 days after they give notice to the MDHR.

Plaintiffs commenced this lawsuit on June 1, 2017, in state court. They gave notice of the claims against Doherty to the MDHR three weeks later, on June 23, 2017, and gave notice of the claims against UPS on July 5, 2017. The relevant statute allows an individual to file suit "after 45 days from the filing of a charge . . . if a hearing has not been held . . . or if the commissioner has not entered into a conciliation agreement." Minn. Stat. § 363A.33, subd. 1(3). The statute then provides that "[t]he charging party shall notify the commissioner of an intention to bring a civil action, which shall be commenced within 90 days of giving the notice." Id.

Only one published opinion has interpreted the statute's notice provision. Sullivan v. Spot Weld, Inc., 560 N.W.2d 712 (Minn. Ct. App. 1997). In that case, the plaintiff served his lawsuit on the defendant in February, but service was improper. Id. at 714 & n.1. The plaintiff then sent the complaint to the MDHR in May. Id. In late October, the plaintiff re-served the lawsuit, this time serving the proper party. Id. The court of appeals concluded that the plaintiff had not complied with the statute because he had not properly filed his lawsuit within 90 days of sending the complaint to the MDHR. Id. at

---

[1] Doherty also raised an issue with respect to Plaintiffs' failure to secure a right-to-sue letter from the MDHR as to Doherty, but as noted, Plaintiffs have received that letter, and thus this issue is moot.

716. Rather, the plaintiff had waited more than five months to properly serve his complaint on the defendant. Id.

The situation here is different, because there is no dispute that Plaintiffs properly filed their lawsuit on June 1. They notified the MDHR of the lawsuit within a month's time. Nowhere in Sullivan does the court of appeals state that the 90-day requirement means that a plaintiff cannot file a lawsuit before notice is given. As to the failure to comply with the statutory notice requirement, the Motion is denied.

**C.    Failure to Accommodate**

Plaintiffs' responses to the Motions make clear that the only adverse action relevant to their claims is their "termination" on June 25. They do not contend that the alleged change in break policy at an unspecified date in June or that the June 14 meeting are actionable events. Thus, to the extent Defendants argue that any claim arising out of these earlier events is time-barred, that argument is moot.

Plaintiffs contend that they have alleged that UPS and Doherty are "co-employers" and that this allegation is sufficient to establish UPS's liability for their termination. Plaintiffs also contend that they alleged in Count 2 "that UPS employee Scott Klein was the Operations Manager at this facility and had a controlling role regarding Plaintiffs' employment." (Pl.'s Opp'n Mem. (Docket No. 89) at 7.) But this allegation does not appear in the Second Amended Complaint. Count 2 says nothing about Mr. Klein at all, and the factual recitations do not contain any allegation that Klein controlled Plaintiffs' employment in any way.

9

A bare allegation that UPS and Doherty were "co-employers" is wholly insufficient to raise a plausible claim that UPS was in fact Plaintiffs' employer for purposes of Title VII or the MHRA. Without any other facts, UPS is entitled to judgment on Plaintiffs' claims.

There is no dispute, however, that Doherty was Plaintiffs' employer. Doherty argues only that Plaintiffs' claims are time-barred. But Plaintiffs filed the EEOC charge within 300 days of their June 25 termination, so their failure-to-accommodate claims as to this event survive.

**CONCLUSION**

Plaintiffs' retaliation claims fail because they have not alleged any protected activity. All of Plaintiffs' claims against UPS fail because they have not alleged any facts to support their theory that UPS was Plaintiffs' co-employer. However, Doherty is not entitled to judgment on Plaintiffs' failure-to-accommodate claims or their discrimination claims.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant UPS's Motion for Judgment on the Pleadings (Docket No. 79) is **GRANTED** and Plaintiffs' claims against UPS are **DISMISSED with prejudice**; and

2. Defendant Doherty's Motion for Judgment on the Pleadings (Docket No. 65) is **GRANTED in part** and **DENIED in part**, and Counts 5 and 6 of the Second Amended Complaint (Docket No. 63) are **DISMISSED with prejudice**.

Dated: December 18, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge